IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RESOURCES FOR HUMAN DEVELOPMENT, INC.<br><br>               Plaintiff,<br><br>       v.<br><br>LOWER PROVIDENCE TOWNSHIP<br><br>               Defendant. | CIVIL ACTION NO. 24-2245 |

MEMORANDUM OPINION

Rufe, J.                                                                                                                                            March 27, 2025

      Plaintiff Resources for Human Development, Inc. ("RHD"), a non-profit organization, filed this lawsuit in state court against Defendant Lower Providence Township after being denied a zoning permit to use a property at Eagleville Hospital as supportive housing for individuals in need.[1] RHD alleges that the Township initially recognized the intended use as permissible under its institutional zoning designation but later reversed its position without clear justification.[2] RHD further alleges that the Township's actions discriminate against individuals of protected class status in violation of the Township's Human Relations Ordinance, Pennsylvania law, and the federal Fair Housing Act ("FHA").[3] The Township removed the action to this Court based on the federal claim.

      Along with the Complaint, RHD filed a motion in state court for peremptory judgment requesting that the state court direct the Township to issue the zoning permit.[4] Under Pennsylvania land use law, landowners may seek mandamus relief to compel zoning permit

---

[1] Compl. [Doc. No. 1] ¶¶ 10–11.

[2] Compl. [Doc. No. 1] ¶¶ 12–15.

[3] 42 U.S.C. § 3601 *et seq*.

[4] Pl.'s Mot. Remand App. C [Doc. No. 8-3] at 2–8.

issuance when the permit right is "clear," as this action is viewed as a ministerial duty with no discretion for the municipal officer.[5] The action was scheduled for a hearing in state court but the Township filed a petition to remove the action to this Court before that occurred.[6] The Township argues that removal is appropriate under 28 U.S.C. § 1441, as the case includes federal questions under the FHA and that this Court may exercise supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. §§ 1331 and 1367.[7]

As a result of the removal, RHD's appeal of the zoning officer's denial and the mandamus action for the zoning permit were postponed.[8] RHD contends that the decision of the Township to remove has "denied RHD its right under the [Municipalities Planning Code ("MPC")] to proceed directly to court."[9] RHD has filed a motion to remand, while the Township has moved to dismiss the Complaint.

## I.     MOTION TO REMAND

RHD argues that this Court should refrain from exercising jurisdiction under the *Younger* abstention doctrine, which applies when federal court proceedings would interfere with ongoing state judicial or quasi-judicial actions.[10] RHD asserts it has two state proceedings pending: an appeal with the Township zoning hearing board and a mandamus action in the Court of Common Pleas, aimed at securing the zoning permit.[11] However, the mandamus proceeding that RHD

---

[5] *Lindy Homes, Inc. v. Sabatini*, 453 A.2d 972, 973 (Pa. 1982) ("Where the right to the permit is clear, the issuance thereof by the proper official is no more than the performance of a ministerial act which admits of no discretion in the municipal officer, and mandamus is both appropriate and proper to compel performance." (citation omitted)).

[6] Pet. for Removal [Doc. No. 1].

[7] Pet. for Removal [Doc. No. 1] ¶ 6.

[8] Pl.'s Mem. Supp. Remand [Doc. No. 8-4] at 4.

[9] Pl.'s Mem. Supp. Remand [Doc. No. 8-4] at 4.

[10] *See Younger v. Harris*, 401 U.S. 37 (1971).

[11] Pl.'s Mem. Supp. Remand [Doc. No. 8-4] at 2–3.

claims as an "ongoing" state action is now before this Court, raising the question of whether a removed action can still qualify as "ongoing" for *Younger* purposes.

The Township argues that this Court should retain jurisdiction over the case because *Younger* abstention does not apply.[12] The Township asserts that *Younger* abstention applies only in limited circumstances involving state criminal, enforcement, or certain civil proceedings, which are not at issue here.[13] Because the FHA claim falls within federal jurisdiction and no parallel state enforcement actions are ongoing, the Township contends that there is no basis for remand.[14]

In response, RHD maintains that abstention and remand are appropriate because the zoning issues—specifically the Township's inconsistent determinations on the permit—are purely local matters rooted in state land use policies, making federal jurisdiction inappropriate.[15] RHD argues that both the FHA claim and the claim under the Township's human relations ordinance are "ancillary" to the primary zoning dispute.[16] RHD contends that federal intervention in such land use matters would interfere with Pennsylvania's established governance of local zoning and land use issues.[17]

Federal courts sitting in equity have original power to abstain from exercising jurisdiction and to remand a case based on abstention.[18] The abstention doctrine was judicially formulated to

---

[12] Def.'s Mem. Opp. Remand [Doc No. 10] at 2.

[13] Def.'s Mem. Opp. Remand [Doc. No. 10] at 3–4.

[14] Def.'s Mem. Opp. Remand [Doc. No. 10] at 3–4.

[15] Pl.'s Reply Supp. Remand [Doc. No. 11] at 1–5.

[16] Pl.'s Reply Supp. Remand [Doc. No. 11] at 5.

[17] Pl.'s Reply Supp. Remand [Doc. No. 11] at 4.

[18] *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717–18 (1996).

maintain balance between state and federal sovereignty.[19] A case will not merit abstention unless there is some discernable state interest or state law implicated in the proceeding.[20] To determine whether *Younger* abstention applies, the federal court must first determine whether the claims would interfere with criminal prosecutions, civil enforcement proceedings, or "civil proceedings involving orders in furtherance of the state courts' judicial function."[21] Second, the court must consider whether "(1) there are ongoing judicial proceedings; (2) those proceedings implicate important state interests; and (3) the party against whom abstention is asserted has an adequate opportunity in the state proceeding to raise constitutional challenges."[22] "[S]tate proceedings are 'ongoing' for *Younger* abstention purposes, notwithstanding [a] state court's stay of proceedings[,] if the state proceeding was pending at the time [the plaintiff] filed its initial complaint in federal court."[23] Here, the state proceeding was pending at the time of removal.

With regard to land use matters, the Third Circuit has held that claims targeting discriminatory actions by local officials in applying ordinances—rather than challenges to the validity of the ordinances themselves—do not meet the criteria for *Younger* abstention.[24] Thus, although challenges to land use ordinances may implicate important state interests, claims

---

[19] *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500-501 (1941).

[20] *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975). *See also Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 746 (3d Cir. 1982) ("[A]bstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.") (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).

[21] *PDX North, Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020).

[22] *Rufo v. Fox*, No. 21-3318, 2022 WL 16646689, at *2 (3d Cir. Nov. 3, 2022) (internal quotation marks and citations omitted)).

[23] *PDX*, 978 F.3d at 885 (internal quotation marks and citation omitted).

[24] *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1201 (3d Cir. 1992), *abrogated by PDX*, 978 F.3d 871.

alleging discriminatory and unconstitutional conduct by Township officials in applying the ordinances may not.[25] Based upon these abstention principles, abstention and remand would be warranted as to the state-law claims, but not to the discrimination claim under the FHA, to which the Court now turns.

## II. MOTION TO DISMISS THE CLAIM UNDER THE FHA

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.[26] In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[27]

The Township argues that RHD fails to allege facts showing discrimination against a protected class under the FHA.[28] It contends that homelessness is not a protected class and that denying the facility applies equally to individuals in and out of protected classes.[29] Therefore, there is no disparate impact or treatment.[30] RHD contends in its opposition to the motion to dismiss that denial of the zoning permit disproportionately impacts African Americans, who represent a significant percentage of the homeless population the housing is intended to serve.[31] RHD asserts that the Township's conduct constitutes unlawful discrimination under the FHA and that further discovery will reveal the discriminatory impact of the Township's actions.[32]

---

[25] *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 409 (3d Cir. 2005).

[26] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

[27] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[28] Def.'s Br. Supp. Mot. Dismiss [Doc. No. 4-1] at 7–8.

[29] Def.'s Br. Supp. Mot. Dismiss [Doc. No. 4-1] at 9.

[30] Def.'s Br. Supp. Mot. Dismiss [Doc. No. 4-1] at 10.

[31] Pl's Resp. Opp. Def.'s Mot. Dismiss [Doc. No. 7] at 21.

[32] Pl's Resp. Opp. Def.'s Mot. Dismiss [Doc. No. 7] at 22.

5

As pleaded in the Complaint, RHD's FHA claim neither identifies a discriminatory policy or practice necessary for a disparate impact claim nor sufficiently alleges the framework for disability discrimination under the Fair Housing Amendments Act ("FHAA"). Instead the Complaint alleges that:

> The bad faith reversal and contradiction of the prior zoning determination and the failure to issue the zoning permit or provide for supportive housing as a legitimate and federally protected land use constitutes discrimination against the class of persons for whom supportive housing is intended, *which includes members of a protected class*.[33]

The class is not identified in the Complaint. In its opposition to the Township's motion to dismiss, RHD contends that it seeks relief under a disparate-impact theory, citing the FHAA as the basis for its claim.[34] The FHAA extends the protections of the FHA to individuals with disabilities and requires local land use boards to make "reasonable accommodations in rules, policies [and] practices" when reviewing proposals for supportive housing. It provides in relevant part that:

> [I]t shall be unlawful—
>
> (f)
> . . . . .
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
> (A) that person; or
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that person.
>
> (3) For purposes of this subsection, discrimination includes—
> . . . . .
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or

---

[33] Compl. [Doc. No. 1] ¶ 36 (emphasis added).

[34] Pl's Resp. Opp. Def.'s Mot. Dismiss [Doc. No. 7] at 19–22 (citing 42 U.S.C. §§ 3604(f)(2), (f)(3)).

services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . .[35]

RHD, however, has not framed its claims within the framework of disability discrimination.[36] Moreover, even if it had, RHD would have to exhaust administrative remedies before pursuing reasonable accommodation claims in court. The Third Circuit has held that review of local land use decisions under the FHAA usually should be limited to the administrative record.[37]

Here, although RHD had an administrative hearing scheduled in state court, that proceeding apparently was stayed once RHD filed this action.[38] Without completing the process and developing a full administrative record, a potential claim of disability discrimination is unexhausted.[39] Although allegations of discriminatory intent could excuse the exhaustion requirement, the Complaint has no such allegations.[40]

In its opposition, RHD also appears to advance a disparate-impact theory under the provision of the FHA that prohibits entities from "otherwise mak[ing] unavailable or deny[ing], a

---

[35] 42 U.S.C. § 3604.

[36] It is possible that RHD could proceed under a theory of "regarded as" discrimination. *See* 42 U.S.C. § 3602(h)(3) ("As used in this subchapter—'Handicap' means, with respect to a person—being regarded as having such an impairment . . . .") (cleaned up).

[37] *Lapid-Laurel, L.L.C. v. Zoning Bd. Of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 451 n.5 (3d Cir. 2002). *See also Revock v. Cowpet Bay W. Condo. Assn.*, 853 F.3d 96, 111 (3d Cir. 2017) ("The defendants must have had an idea of what accommodation [the plaintiff] sought prior to their incurring liability for refusing it.") (quoting *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 49 (2d. Cir. 2012)).

[38] *See* Pl.'s Reply to Def.'s Resp. Mot. Remand App. A [Doc. No. 11-1].

[39] *See Lapid-Laurel, L.L.C.*, 284 F.3d at 451 ("Notwithstanding the foregoing, we point out that it may be necessary for a court reviewing an FHAA reasonable accommodations claim to look outside of the administrative record when a land use board either intentionally or inadvertently prevents an applicant from presenting the evidence necessary to support an FHAA reasonable accommodations claim.").

[40] *Id.* at 451 n.5 ("[I]f the plaintiff's claim were of discriminatory intent, rather than failure to make a reasonable accommodation, th[e] claim might well be presently ripe even though [the plaintiff] has not sought a special use approval.") (internal quotation marks and citation omitted).

dwelling to any person because of race, color, religion, sex, familial status, or national origin."[41] RHD argues that many of those it would serve are African American and that "[g]iven the opportunity to develop the record in this matter further, the discriminatory impact of the Township's denial of a zoning permit and failure [to] provide for supportive short-term housing within the Township on African American homeless individual will be demonstrated."[42] Indeed, the FHA encompasses disparate-impact claims.[43] However, "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact."[44] "[A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity."[45] This "robust causality requirement ensures that 'racial imbalance, does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create."[46]

The Complaint lacks any allegations to show this necessary causal link. It does not identify any specific Township policy or practice that could be evaluated under the FHA's disparate-impact framework.[47] The Township's denial of RHD's zoning permit is a *decision* by

---

[41] 42 U.S.C. § 3604(a).

[42] Pl.'s Mem. Opp. Mot. Dismiss [Doc. No. 7] at 22.

[43] *Texas Dep't of Hous. and Cmty. Affs.. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 534 (2015) [hereinafter *ICP*]. "A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin." 24 C.F.R. § 100.500(a).

[44] *Hanrahan v. Blank Rome LLP*, 142 F. Supp. 3d 349, 354 (E.D. Pa. 2015) (quoting *ICP*, 576 U.S. at 543).

[45] *ICP*, 576 U.S. at 542.

[46] *Id*. (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989), superseded by statute on other grounds, 42 U.S.C. § 2000e–2(k)) (cleaned up).

[47] For cases where a disparate impact claim on the basis of race has proceeded, *see, e.g.*, *Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mt. Holly*, 658 F.3d 375 (3d Cir. 2011) (holding that plaintiffs established a prima facie case of disparate impact under the FHA by presenting statistical evidence showing the redevelopment plan would disproportionately affect minority residents); *MHANY Mgt. Inc. v. Inc. Village of Garden City*, 985 F. Supp.

the local land use board which, as it pertains to disparate impact, is relevant only to the FHAA's reasonable accommodations provision.[48] It does not constitute policy or practice.[49] For these reasons, RHD has failed to state a claim under the FHA.[50]

### III.  CONCLUSION

The claim under the FHA will be dismissed without prejudice and with leave to amend. If Plaintiff does not file an amended complaint, the case will be remanded for lack of federal jurisdiction.[51] If Plaintiff files an amended complaint, the Court will retain jurisdiction to determine the FHA claim, and will abstain from hearing the remaining claims, which will be remanded to state court.

---

2d 390, 425 (E.D.N.Y. 2013), *aff'd*, 819 F.3d 581 (2d Cir. 2016) (holding that a zoning change disproportionately impacted minority households by eliminating affordable rental housing and rejecting the argument that plaintiffs failed to challenge a facially neutral policy or practice, reasoning that "the zoning law at issue here is not one specific act similar to the denial of a variance of a particular parcel of property.").

[48] "Under the FHAA, unlawful discrimination includes a 'refusal to make reasonable accommodations in rules, policies, practices, or services . . . .' We have applied this provision to the decisions of local land use boards." *Allentown Victory Church v. City of Allentown, Pennsylvania*, No. 22-2817, 2024 WL 3439772, at *5 (3d Cir. July 17, 2024) (quoting 42 U.S.C. § 3604(f)(3)(B)) (cleaned up).

[49] "For instance, a plaintiff challenging the decision of a private developer to construct a new building in one location rather than another will not easily be able to show this is a policy causing a disparate impact because such a one-time decision may not be a policy at all." *ICP*, 576 U.S. at 542. RHD has not alleged discriminatory intent against a protected class. Although public comments suggested animus based on national origin, RHD has not alleged that the Board's decision was so motivated. *See* Pl.'s Opp. Mot. Dismiss App. A [Doc. No. 7-1] at 13 ("Do you know there's a record number of illegal aliens coming into this country every day? The government can't even evaluate them. How is he going to evaluate them? Are you going to know who's coming in? Are you going to tell me this ain't going to happen?"); *id*. at 17 ("And what I want to know, too, is, who's making these referrals? How do you do a records check on people who don't have backgrounds who are coming from nations across the world? And will this at one point in time turn into a migrant center where our police officers have to put up with this nonsense?"); *id*. at 20 ("We're going to give help to people that are illegal immigrants coming into this country.").

[50] See *Nernberg v. Borough of Sharpsburg, Pa.*, No. 14-931, 2015 WL 1651011, at *5 (W.D. Pa. Apr. 14, 2015) (holding that plaintiffs failed to state a claim for disparate impact under the FHA where the amended complaint's "single mention of race" was conclusory and unsupported by factual allegations showing the ordinance caused a disparate impact based on race).

[51] *See Royal Canin U.S.A. Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025) ("If . . . the plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves." With the loss of federal-question jurisdiction, the court loses as well its supplemental jurisdiction over the state claims.).